LAIDLAW BROTHERS, INCORPORATED, v. S. M. N. MARRS, STATE SUPERINTENDENT OF PUBLIC INSTRUCTION.

No. 4383.   Decided June 8, 1925.

(273 S. W., 789).

**1.—School Text Books—Contract—Board of Education—State Superintendent.**

When a contract has been made between the State Text Book Commission and publishers for supplying a book to the public schools and the State Board of Education has passed on same, identifying the book and the publishers entitled to furnish it and ordering the contract carried out by the State Superintendent, a completed contract has been made. It is not thereafter within the power of the Board of Education to rescind their action and pronounce the contract void or avoided, and instruct the State Superintendent to disregard it. This could only be done by action in court and for valid reasons. (Pp. 567, 568).

**2.—Same—Mandamus—Discretionary Act.**

The contract rights of a publisher to furnish books to the State having become vested, the Board of Education had no power to forbid and the superintendent of Public Instruction no discretion as to performing or not the ministerial acts required of him in carrying out such contract; and his performance of them could be compelled by mandamus. (P. 567).

**3.—Same—Board of Education.**

The State Board of Education had no power, discretionary or otherwise, to annul a legal contract once made. Its discretion in determining the existence of such contract could be exercised but once, and having done this there was no interference with its discretion in directing by mandamus its performance by the Superintendent. (Pp. 567-569).

**4.—Same.**

Where, by the discretionary action of an executive officer, rights of private parties have become vested, neither he nor his successors in office can destroy such rights by undertaking to annul such action. (P. 569).

**5.—Voidable Contract—Irregularities—Waiver—Election.**

If the contract with the State was voidable by reason of irregularities which the Board of Education had power to waive, their action in approving the contract was an election to exercise such power of waiver, by which they were bound. They could not make subsequent election to avoid it. (Pp. 569, 570).

114 Tex. Sup.—36.

6.—Cases Followed.

Chas. Scribner's Sons v. Marrs, 114 Texas, 11; American Book Co. v. Marrs, 113 Texas, 291; and American Book Co. v. Marrs, 114 Texas, 40; are approved and followed. (Pp. 566, 570).

7.—Suit Against State—Mandamus.

Where an act is required of an officer by law and is purely ministerial mandamus will lie to require its performance; and such action is not a suit against the State, or, if so, is one authorized by the State, though the performance enforced is in the carrying out of a contract by the State. Herring v. Houston Natl. Exch. Bank, 113 Texas, 264, is distinguished. (Pp. 570, 571).

Original action in the Supreme Court, by Laidlaw Bros. Inc., for writ of mandamus against Marrs as State Superintendent of Public Instruction.

*D. K. Woodward Jr.,* for relator.

Relator and the State of Texas entered into a valid, binding contract in writing for the furnishing of Relator's textbook to the State of Texas in accordance with the terms of such contract for the period beginning September 1, 1925, and ending with the end of the scholastic year beginning September 1, 1929, which contract became finally and irrevocably binding upon the parties thereto when approved by the State Board of Education at its meeting January 10-12, 1925. Charles Scribner's Sons v. Marrs, 262 S. W., 722; American Book Co. v. Marrs, 262 S. W., 730.

The contract between Relator and the State of Texas was valid and complete and could not be impaired by the subsequent acts of the State Board of Education undertaken at its meetings of April 13, April 18 and May 13, 1925. In so far as such acts undertook to impair or abrogate Relator's contract, the same were null, void and of no effect. State v. Kroner, 2 Texas, 492; State v. Purcell, 16 Texas, 305; State v. Snyder, 66 Texas, 700; Jumbo Cattle Co. v. Bacon & Graves, 79 Texas, 5; Fristoe v. Blum, 92 Texas, 80; Willoughby v. Long, 96 Texas, 199; Salgado v. Baldwin, 105 Texas, 508; Anderson v. Robison, 229 S. W., 459; Johnson v. Smith, 246 S. W., 1013; Noble v. Union River Logging Co., 147 U. S., 165; Garfield v. Golsby, 211 U. S., 249; Ballinger v. Frost, 216 U. S., 240.

*Dan Moody,* Attorney-General, and *Wright Morrow, C. A. Wheeler,* and *L. C. Sutton,* Assistants *W. G. Love,* of counsel for respondent.

The State Board of Education is, by the Constitution and statutes, vested with final power and authority to act for the State in all matters relating to the purchase of text-books or the performance of any contracts therefor. The State Superintendent of Public Instruction is only a ministerial officer or agent of the government with regard to the purchase of text-books or the performance of any act necessary

or proper to be done in connection with the purchase thereof; he has no authority and is under no duty to perform any act in that regard except such as is authorized or approved by the State Board of Education, and any effort to compel him to take any action in that connection not authorized or approved by the State Board of Education, or in violation of its orders and directions, constitutes an effort to control the action of the State Board of Education with reference to matters as to which this court has no authority to control said Board or the members thereof.    State Constitution Section 8, Article 7 and Section 3, Article 5; Rev. Stats., Articles 2904¼ d and 2904¼ l; American Book Company v. Marrs, 253 S. W., 817; Chas. Scribner & Sons v. Marrs, 262 S. W., 722.

The State Board of Education may for any reason, deemed by it sufficient, decline to carry out or perform any alleged contract with the State for the purchase of text-books, and its decision in that regard is not subject to review by the Supreme Court in a mandamus proceeding; and when said Board has declined to carry out an alleged contract for the purchase of text-books, on the ground that no such contract exists, or that the same is void or voidable, or that the public interest demands that it should not be performed, or for any other reason has ordered and directed the State Superintendent of Public Instruction not to take any steps to carry out or perform such contract, it is his duty to obey such orders and directions and he cannot be compelled by mandamus to disregard them.    American Book Co. v. Marrs, 253 S. W., 817; Chas. Scribner & Sons v. Marrs, 262 S. W., 722.

A State, like an individual, is liable for a breach of its contracts, although, in the absence of a statute authorizing suits against the State, the contractor cannot enforce performance or recover damages, and his only remedy is an appeal to the Legislature for relief.    Herring v. Houston Natl. Exch. Bank, 253 S. W., 813, 269 S. W., 1031; Marshall v. Clark, 22 Texas, 23; Miller v. State Board of Agriculture, 46 W. Va., 192, 32 S. E., 1007; State v. Mortenson, 69 Neb., 376, 95 N. W., 831; 36 Cyc. 880; State v. Cobb, 64 Ala., 127; Frank v. State, 154 Cal., 730, 99 Pac., 189; Union Trust Co. v. State, 154 Cal., 716, 99 Pac., 183; Swann v. Buck, 40 Miss., 268; State v. Kinney (Mont.) 24 Pac., 96; American Dock & Imp. Co. v. Trustees of Public Schools, 32 N. J. Eq., 428; McMaster v. State, 108 N. Y., 542, 15 N. E., 417; Stewart v. State, 118 N. C., 624, 24 S. E., 114.

The rule which permits a public officer to be compelled by mandamus to perform a ministerial or official duty imperatively required of him by law, has no application in a case where the writ is applied for to compel the performance of an executory contract with the State for the enforcement of contract rights; and for the same reason a suit cannot be maintained against an officer of a State to compel him to do any act which would constitute a performance by the State of its con-

tract. Louisiana v. Jumel, 107 U. S., 711; Hagood v. Southern, 117 U. S., 52; Ex parte Ayers, 123 U. S., 443; North Carolina v. Temple, 134 U. S., 22; Cope v. Hasting, 183 Pa. St., 300, 38 Atl., 717.

Mandamus will not lie in this case to compel the respondent to do any act or perform any duty necessary to carry out the alleged contract with the relator, because the performance of such act as the respondent may lawfully do in that connection would be ineffectual and insufficient to afford the relator the relief sought, without the concurrence of other action on the part of the State Board of Education—further action on the part of said Board being necessary to compel the purchase of relator's books and the performance of its alleged contract. People v. Dunne, 258 Ill., 441, 101 N. E., 560; Livingston v. McCarthy, 48 Kan., 20, 20 Pac., 478.

The alleged adoption of the resolution by the State Board of Education on January 10th and 12th, 1925, being subject to change, modification or rescission at any time prior to the execution thereof, was not final, and therefore the subsequent action of said Board by which it determined that said contracts were void and voidable and should not be performed, and directed the State Superintendent not to take any steps to carry out or perform the same, is binding upon the State Superintendent and he cannot be compelled to disregard such orders and directions. Montfort v. Navarro County, 226 S. W., 424; 29 Corpus Juris, 563.

In support of a motion for rehearing, which was overruled.

This is an attempted suit against the State of Texas without its consent and cannot be maintained. American Book Co. v. Marrs, 253 S. W., 817; Antoni v. Greenhow, 107 U. S., 769; Brown v. Rhode Island Col. of Ag., 56 Fed., 55; Chas. Scribner's Sons v. Marrs, 262 S. W., 722; Chesapeake etc. R. Co. v. Miller, 19 W. Va., 408; Ex parte Ayres, 123 U. S., 443; Fitts v. McGehee, 172 U. S., 516; Gillam v. Null, 58 Texas, 298; Hagood v. Southern, 177 U. S., 52; Herring v. Houston Natl. Exch. Bank, 113 Texas, 264; Hosner v. De Young, 1 Texas, 764; Jurnigan v. Finlay, 90 Texas, 205; League v. De Young, 2 Texas, 497. Louisiana v. Steele, 134 U. S., 230; Louisiana v. Jumel, 107 U. S., 746; Marshall v. Clark, 22 Texas, 22; Miller v. State Board of Agriculture, 46 W. Va., 192, 76 A. S. R., 811; Mills Pub. Co. v. Larrabee, 78 Iowa, 97; North Carolina v. Temple, 134 U. S., 22; Osborn v. Bank of U. S., 9 Wheat., 738, 857; Parks v. West, 102 Texas, 11, 111 S. W., 726; Parsons v. Slaughter, 63 Fed., 876; People v. Dulaney, 96 Ill., 503; Pennoyer v. McConnaughey, 140 U. S., 1; Poindexter v. Greenhow, 114 U. S., 270; Railroad Co. v. Gross, 47 Texas, 429; Railroad Co. v. Randolph, 24 Texas, 317; Smith v. Reeves, 178 U. S., 436; State v. Moore, 57 Texas, 307; Taylor v. Hall, 71 Texas, 206; Treasurer v. Wygall, 46 Texas, 447; Thompson v. Baker, 90 Texas, 163, 38 S. W., 21; Virginia Coupon Cases, 114 U. S., 335, 5 Sup. Ct., 965; Williams v. Hagood, 98 U. S., 72; Yale College v. Sanger, 62 Fed., 177.

MR. JUSTICE PIERSON delivered the opinion of the court.

Relator seeks a mandamus against respondent to require him to do and perform the ministerial or statutory duties which it has a legal right to have performed in regard to its contract with the State for the purchase of certain textbooks, to-wit: ''Our Government,'' Davis and McClure, Regular Edition, by the State, and the furnishing of them by it to the State under the terms of its said contract and the provisions of the statutes.

Without reciting each detailed step in the process of entering into and executing the contract by the Texas State Textbook Commission, and the action taken thereon by the State Board of Education on January 12, 1925, and the subsequent actions taken by the Board in April and May, as set out in relator's petition and respondent's answer, the following will be sufficient for a comprehension of the issues involved:

The Texas State Textbook Commission was duly convened in December, 1924, and under the formalities and requirements of statutory law said Commission made an award to relator selecting its book ''Our Government'' for use in the public free schools of the State, and entered into a contract duly and regularly signed and executed by the State and relator under the provisions of the law.

Thereafter, on January 12, 1925, the State Board of Education, at a regular meeting, found and ascertained that relator is a contractor with the State, and that it has a contract to furnish to the State the above named textbook. It entered its finding to that effect by proper resolution, and so notified respondent, in order that the contract might be observed according to its terms under the statutes relating thereto.

Thereafter, on April 13, 1925, and again on May 13, 1925, and before requisition blanks listing the aforesaid books of relator were sent out to the school officials in the various school districts of the State, the State Board of Education met, and passed a resolution directing respondent not to place the name of the books of relator selected by the State Textbook Commission at its meeting in December, 1924, on the requisition blanks to be sent out by him, declaring the contract of relator void and voidable, and declaring that the books named in the aforesaid contract were not needed, and that no funds had been set aside for the payment for said books, and instructing respondent Marrs to give no recognition to relator's said contract.

This suit was brought by relator, alleging that its contract as entered into between it and the State Textbook Commission, and found to exist by the State Board of Education on January 12th, created and contracted an obligation by and between it and the State of Texas that could not thereafter be set aside or annulled; that the State Board of Education was not thereafter empowered to reconsider, annul, or declare void or voidable its said contract, and that its said actions in regard thereto are without effect, and that respondent S.

M. N. Marrs, State Superintendent of Public Instruction, as he is required to do under Article 2904-¼i, is in duty bound to send out requisition blanks containing the title of the books under relator's contract.   It alleged that said duty is one required by law and is ministerial in its character, that respondent has refused and is refusing to perform that duty, and prays that this Court issue its mandamus requiring said Superintendent to send out the necessary requisition blanks containing the name of relator's book, and to do the other necessary things as required by the statutes relating to said contract.

The issues made by respondent Marrs, that are applicable under the facts of the case, are substantially as follows: That this Court is without jurisdiction because this is an attempted suit against the State without its consent; that it is a suit to enforce *specific performance of a contract* against the State; that the duties of respondent are ministerial in character, and are performed under the direction of the State Board of Education, and that said Board by its orders of April and May, 1925, had declared said contract to be void and voidable and had instructed him not to carry it out; that the State of Texas is not obligated to purchase any particular amount of textbooks, or any at all, unless and until needed, and it having been determined by the State Board of Education that the textbook named in relator's contract will not be needed, respondent has no authority to send out requisition blanks containing its title; that relator's contract is in fact void and voidable.   However, it was admitted that the contract had been regularly made and entered into as alleged by relator.

Respondent maintains that the orders of the State Board of Education of April and May, 1925, are in all things valid, and are conclusive and binding upon him, his duties being ministerial, and therefore relator is not entitled to the writ of mandamus.

In the case of Charles Scribner's Sons v. S. M. N. Marrs, State Superintendent, 114 Texas, 11, 262 S. W., 722, the contention of respondent Marrs was not that the writ of mandamus should not issue *if a contract* existed between relator and the State, but that there was no legal contract.   Here the contract is admitted, but it is insisted that the State Board of Education has the authority or discretionary power under the law to control its performance, and under their judgment, through instructions to respondent, to prevent its performance or to cancel and set it aside altogether.

This case is ruled by the principles announced in the cases of American Book Company v. Marrs, 113 Texas, 291, 253 S. W., 817, Charles Scribner's Sons v. Marrs, 114 Texas, 11, 262 S. W., 722; and American Book Company v. Marrs, 114 Texas, 40, 262 S. W., 730, and the facts of this case bear a close analogy to those in the Scribner's Sons Case.

Relator's contract was regularly and legally made by the State Textbook Commission, and on January 12, 1925, the State Board of Education acted upon it, found it to be regular and valid, and by formal order instructed respondent, State Superintendent of Public Instruction, to take the necessary steps required by law looking to its performance. Thereafter, in April and May, 1925, the State Board of Education undertook to rescind the action taken by the Board on January 12th, and by resolution instructed respondent Marrs to disregard relator's said contract.

Was the action of the Board of Education on January 12th, establishing the identity and validity of the contract and ordering its performance, final and conclusive, and thereafter binding upon the State Board of Education? We must so hold.

The contract had been regularly entered into and executed by both parties, the State and relator; the body authorized to do so, the State Board of Education, had entered its official recognition of it, and had officially certified its identity and validity to respondent Marrs, State Superintendent of Public Instruction, and contractual rights had attached under it.

It is the earnest contention of respondent Marrs that the State Board of Education may exercise power over the contract to review the act of affirmance and to set the contract aside, as it attempted to do by its subsequent orders of April and May, 1925.

Nowhere in the statutes do we find any authority to do so. The provisions, generally, looking to its performance, the purchase of books for use in the schools under it, the penalties provided for failure on the part of the contractor to furnish books when ordered, etc., seem to negative such continuing control or authority in this regard.

It is presented by respondent that this authority is within the discretionary power of the State Board of Education under its "duty to purchase books from the contractors of textbooks used in public free schools of this State," Art. 2904-1/4 and the provisions of the Constitution and statutes which provide that the Board of Education shall set aside out of the available school fund a sufficient amount to provide free textbooks for use of the children in the schools, and that the courts will not interfere with the exercise of discretionary power, and that this suit is an attempt to control the discretion of the Board of Education. If the premise were correct,—that is, that the Board of Education has the discretionary power to rescind the former act of the Board of Education and reject the contract, and if its acts in attempting to do so were valid, that would be true, and this would be an attempt to control discretionary power of the Board of Education, and relator would not be entitled to a writ of mandamus against respondent Marrs to require him to do that which the Board had instructed him not to do.

No effect can be given to the acts of the Board of April and May, 1925. It is not contended, and of course it cannot be held, that the Board under discretion or otherwise has legal power or authority to reject or annul a valid contract once it has become legally binding upon the parties and rights have accrued thereunder.

After the contract had been legally executed, the act of the State Board of Education in reviewing the acts of the State Textbook Commission, in determining that relator had a valid contract and in ordering it to be observed, concluded the matter of establishing the identity and validity of the contract and was final. Nothing remained to be done in that respect. It was then subject to be performed under the statutes regulatory thereof, unless set aside by proper judicial action for sufficient legal reasons. Art. 2909n.

Rights under the contract had attached; the identity and validity of the contract had been legally determined, and the contract certified for performance at the hands of those charged by law with the doing of acts necessary to its performance. Contractual obligations became fixed and cannot be recalled. Marbury v. Madison, 1 Cranch, 137, 2 L. Ed., 60. If the duties of the State Board of Education in regard to determining who are contractors of textbooks and instructing respondent, State Superintendent, in regard to them, are discretionary, in this case that discretion has been exercised and rights have become fixed and the discretion cannot be exercised again to undo them.

The case of Marbury v. Madison, 1 Cranch, 137, in reasoning is analogous to the case before us. In the course of the opinion the Supreme Court of the United States, speaking through Chief Justice Marshall, said:

"The question whether a right has vested or not, is, in its nature, judicial, and must be tried by the judicial authority.

*   *   *   *   *   *   *

"Where the head of a department acts in a case, in which executive discretion is to be exercised; in which he is the mere organ of executive will, it is again repeated, that any application to a court to control, in any respect, his conduct, would be rejected without hesitation.

"But where he is directed by law to do a certain act affecting the absolute rights of individuals, in the performance of which he is not placed under the particular direction of the President, and the performance of which the President cannot lawfully forbid, and therefore is never presumed to have forbidden; as for example, to record a commission, or a patent for land, which has received all the legal solemnities; or to give a copy of such record; in such cases, it is not perceived on what ground the courts of the country are further excused from the duty of giving judgment that right be done to an injured individual, than if the same services were to be performed by a person not the head of a department."

In Noble v. Union River Logging Railroad Co., 147 U. S., 165, 37 L. Ed., 123, the Secretary of the Interior had approved a map filed by the railroad company, the filing of which under an act of Congress gave the railroad company a right-of-way through public lands of the United States. The successor in office to the Secretary of the Interior undertook to reconsider the approval of said map, rejected it, and cancelled the railroad company's permit. The United States Supreme Court held that the latter act was void; that once the discretionary power had been exercised, rights attached, and the power could not again be exercised to divest those rights. The Court said:

"The railroad company became at once vested with the right of property in these lands, of which they can only be deprived by a proceeding taken directly for that purpose. If it were made to appear that the right-of-way had been obtained by fraud, a Bill would doubtless lie by the United States for the cancellation and annulment of an approval thus obtained. Moffatt v. U. S., 112 U. S., 24; United States v. Minor, 114 U. S.; 233.

"A revocation of the approval of the Secretary of the Interior, however, by his successor in office was an attempt to deprive the plaintiff of its property without due process of law, and was, therefore, void."

When, by the discretionary action of an executive officer, rights of private parties have become vested, neither he nor his successors in office can annul those rights by undertaking to revoke such action. Emblem v. Lincoln Land Company, 42 C. C. A., 499, 102 Fed., 563; Garfield, Sec'y, v. Goldsby, 211 U. S., 249, 53 L. Ed., 168; Harper v. Terrell, 96 Texas, 479, 73 S. W., 949; Mitchell v. Robison, Commissioner, 103 Texas, 641, 642, 132 S. W., 465; Logan v. Curry, 95 Texas, 664, 69 S. W., 129.

We have already applied the principles discussed to the facts of this case regarding the action taken on relator's contract by the State Board of Education on January 12, 1925. This Court has recognized these principles and applied them to textbook contracts under contentions similar to those in this case, in the recent cases of Chas. Scribner's Sons v. Marrs, 114 Texas, 11, 262 S. W., 722, and American Book Co. v. Marrs, 114 S. W., 40, 262 S. W., 730 (June, 1924). It was distinctly held in those cases that if a textbook contract was voidable, it became valid when the State through the Board of Education had elected "to adopt and make use" of it, and was a valid contract, enforceable alike upon the State and the textbook company, and when so adopted, *thereafter* respondent Marrs could not contest its validity, and that his duties in doing the acts necessary to its performance were ministerial. The Court said:

"Under the facts this contract is not voidable; but, if it had been, the State having elected to enforce it according to its terms, it would now be an enforceable contract."

It was held in those cases that when the Board of Education acted, its act became effective and concluded the validity and binding effect of the contract, and also thereafter any irregularities in its execution were waived, and' that the respondent Marrs could not raise them. Therefore, this contract not only constitutes a valid enforcible contract, binding alike upon the State and the relator, but any irregularities in its execution were waived and cannot be raised by respondent.

The action of the Board of Education on January 12th on relator's contract gave rise to respondent's duties regarding it. The acts to be performed by respondent are required by law and are ministerial, as was held in American Book Company v. Marrs, 113 Texas, 291, 253 S. W., 817, and Charles Scribner's Sons v. Marrs, 114 Texas, 11, 262 S. W., 722. Being required by law and being ministerial, mandamus will lie to compel their performance.

It is well established in law, and admitted we think by counsel for respondent, that if an act is required by law and the performance of it is purely ministerial, mandamus will lie to require its performance and that the suit is not one against the State.

In Jernigan v. Finley, Comptroller, 90 Texas, 205, in a mandamus proceeding brought against the Comptroller the Attorney General contended that "this is a suit against the State and cannot be maintained." Responding to this contention, the Court said::    :

"In pursuance of the power conferred upon it by amended Section 3 of Article 5 of the Constitution, the Legislature has given this court jurisdiction to issue the writ of mandamus against any State officer, the Governor excepted. That is, it has authorized a suit *against any such officer to compel him to perform the duties imposed upon him by law*. It can hardly be said that such a suit is one against the State, but if it be such in any sense, it is nevertheless proper and maintainable because the State has authorized it to be brought." (Italics ours).

This holding is clearly correct, and has been so uniformly applied by this Court that seldom is the question raised or referred to in the cases.

Also, the fact that the performance of a ministerial act required by law results in the performance of a contract is no reason why it will not issue. The effect it may have upon the performance of a contract is incidental, provided the right under the law exists for its issuance.

The case of Herring et al. v. Houston National Exchange Bank, 113 Texas, 264, 253 S. W., 813, and 269 S. W., 1031, was one simply to compel the performance of a contract made by the State, and it was held to be a suit against the State. Much care was exercised to determine whether or not the Legislature through a certain resolution had provided by law for the performance of the contract, i. e., for the payment by agents of the State of the notes sued on. It was assumed

that if such acts had been required by law or authorized by joint resolution of the Legislature, the mandamus would issue.

For a discussion of the relation of a textbook contract to the number or amount of books needed, see Charles Scribner's Sons v. Marrs, 114 Texas, 11, 262 S. W., at p. 725.

It being determined in this case that the order of the State Board of Education of January 12, 1925, is final and binding upon respondent, and that the acts to be performed by respondent Marrs are ministerial in their nature and required by the terms of statutory law, relator is entitled to a mandamus, and the writ is granted as prayed for.